FRANCIS v. CORNELIUS. (No. 8056.)

(Court of Civil Appeals of Texas. Ft. Worth. Dec. 19, 1914. On Motion for Rehearing, Jan. 23, 1915.)

1. EVIDENCE ⟨⟩444 — PAROL — CONDITIONAL LIABILITY—BONDS.

Where defendant, who signed a bond, made it a condition that the signature of others should be procured, and that condition which was agreed to by the one presenting the bond for signatures was made known to the obligee before delivery, evidence thereof is admissible in a suit on the bond where the signatures of the others were not procured.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1929–1944, 2049; Dec. Dig. ⟨⟩ 444.]

2. APPEAL AND ERROR ⟨⟩216—OBJECTIONS AT TRIAL—NECESSITY—REQUESTS FOR INSTRUCTIONS.

Where plaintiff sued on a bond both as obligee and assignee of an obligee, he cannot complain of the general admission of evidence of a condition precedent to the obligor's liability, which was binding on plaintiff, but not his assignor, where there was no request to

limit such testimony to plaintiff's suit as obligee.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⟨⟩216; Trial, Cent. Dig. § 627.]

3. GUARANTY ⟨⟩25—ACTIONS—EVIDENCE.

In a suit on a bond, evidence *held* not to show that plaintiff's assignor knew of a condition precedent to the obligor's liability.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 102, 103, 104; Dec. Dig. ⟨⟩25.]

4. GUARANTY ⟨⟩32—RIGHT OF ASSIGNEE.

Where one of the obligees of a bond, who did not know of a condition imposed by the obligor, assigned his interest to the other obligee, who knew of the condition and was bound thereby, such obligee may recover as assignee, though he could not recover as obligee.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 35; Dec. Dig. ⟨⟩32.]

5. GUARANTY ⟨⟩25—ACTIONS—EVIDENCE.

In a suit on a bond, evidence *held* to sustain a verdict that the obligor notified the obligee that he would not be bound unless the signatures of others were procured.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 102, 103, 104; Dec. Dig. ⟨⟩25.]

Appeal from District Court, Jones County; John B. Thomas, Judge.

Action by M. H. Francis against J. W. Cornelius. From a judgment for defendant, plaintiff appeals. Reversed and rendered.

J. W. Boynton and Walter S. Pope, both of Anson, for appellant. Brooks & Brooks and Chapman & Coombes, all of Anson, for appellee.

BUCK, J. This was an action by appellant in his own behalf, and also as the owner by transfer of the claim of T. M. Harrell, instituted December 13, 1913, in the district court of Jones county, against Lige Davis, Geo. H. Baker, F. E. Hudson, George Eoff, J. L. Keen, and appellee, J. W. Cornelius, upon the following bond:

"We, the undersigned persons, do hereby jointly and severally bind and obligate ourselves, our heirs and assigns, to, on January 1, 1912, pay to T. M. Harrell and M. H. Francis, and each of them, the sum of twenty-five thousand dollars, with interest thereon at 10 per cent. per annum from the 1st day of January, 1912, together with 10 per cent. attorney's fees if sued on, or placed in the hands of an attorney for collection, to be levied on our respective goods and chattels, lands, tenements.

"The conditions, however, of this obligation are such that whereas on this day the said T. M. Harrell and M. H. Francis have each respectively executed to the Farmers' & Merchants' National Bank of Anson, Tex., their respective notes for twelve thousand five hundred dollars each, each of said notes bearing even date herewith, and to become due on January 1, 1912, and bearing interest after maturity at 10 per cent. per annum, and providing for 10 per cent. attorney's fees, if sued on or placed in the hands of an attorney, and are secured by two deeds of trust, executed respectively by the said T. M. Harrell and M. H. Francis, to D. T. Bomar, trustee.

"As between the makers and the payee of said notes they are each accommodation paper, and were executed to said bank at the request of the undersigned for the purpose of enabling

said bank to relieve the undersigned and others from the embarrassment caused by the suspension of said bank.

"Now, therefore, if the undersigned shall well and truly protect and save harmless the said T. M. Harrell and M. H. Francis and each of them from the payment of any and all sums of money on said note and each of them, except $13/300$ of such net sum as the said T. M. Harrell shall be required to pay on his note to said bank, and $10/300$ of such net sum as the said M. H. Francis may be required to pay on his said note to said bank, then this obligation to be null and void; otherwise to remain in full force and virtue.

"In witness whereof we hereunto sign our names on this 22d day of December, A. D. 1910.

          "Geo. H. Baker.
          "Lige Davis.
          "Isaac Hudson Est.
              his
          "Geo. X Eoff.
             mark
          "J. W. Cornelius.
          "J. L. Keen.

"Witness as to signature of Geo. Eoff: D. T. Bomar and Lige Davis."

The court rendered judgment by default against Lige Davis, Geo. Eoff, and J. L. Keen; and in favor of Geo. H. Baker on his plea of discharge in bankruptcy; and in favor of F. E. Hudson, by sustaining a general demurrer to plaintiff's petition, which alleged that F. E. Hudson had signed the name Isaac Hudson Est. (by Est. meaning estate) in said bond sued on; and in favor of J. W. Cornelius, appellee—from which judgment, as to Cornelius, appellant appeals.

Said bond or written contract was executed under the following circumstances, to wit: December 15, 1910, the Farmers' & Merchants' National Bank of Anson, Tex., hereafter styled F. & M. Bank, failed and closed its doors. Its stock consisted of 300 shares of the par value of $100 each, of which stock J. L. Keen owned 20 shares, Lige Davis 58 shares, Geo. H. Baker 70 shares, Geo. Eoff 12 shares, T. M. Harrell 13 shares, M. H. Francis 10 shares, and the other shares being distributed among other parties not necessary here to mention. The comptroller sent a man from his office to make some arrangements for said bank's liquidation. The First National Bank of Anson agreed to act as liquidating agent, without pay, if the F. & M. Bank would turn over to it all of its assets, and would further secure said First National Bank by depositing with it, in addition to said assets, $25,000 worth of paper secured by real estate. The stockholders of the said F. & M. Bank met, and, after some discussion, M. H. Francis and T. M. Harrell each agreed to execute and deliver to said First National Bank his promissory note in the sum of $12,500, properly secured by a deed of trust on certain real estate, said two notes thus aggregating the $25,000 required, provided the bond hereinbefore set out should be executed by the other stockholders of the said F. & M. Bank, and also certain other parties, including appellee, who were sureties on a certain bond which the F. & M. Bank had theretofore given Jones

county; said F. & M. Bank being the depository of Jones county, and the latter bond being in the sum of $125,000, and conditioned as required by law. At this meeting of the stockholders of the F. & M. Bank Lige Davis and Geo. H. Baker, the latter being the president of said bank, agreed to secure the necessary signatures of the parties aforementioned to the indemnity bond to said Harrell and Francis, and later Mr. Baker presented the bond to appellee for his signature. Appellee at first declined to sign the same, but, as pleaded and testified by him, finally consented to sign the indemnity bond provided all the shareholders of the F. & M. Bank, except, of course, Francis and Harrell, in whose behalf the bond was given, and the sureties on the bond to Jones county, would also sign it. As will be seen from recitations of the bond heretofore set out, the condition of the bond was that, if the obligors should protect and save harmless appellant and his assignor from the payment of any and all sums of money on said notes, except that appellant should pay $10/300$ and his assignor $13/300$, the obligation should be void.

In his petition appellant alleged that he and his assignor had executed said notes and deeds of trust, and had fully complied with their part of the conditions of said bond, and had been required to pay on said notes certain sums, which, reduced by collections made of the assets of said F. & M. Bank and payments made by other defendants than appellee, left a balance of $3,912.09 on the note of appellant, and $5,964.16 on the note of his assignor, which sums had not been paid, and for which sums, and 10 per cent. interest thereon, and $450 attorney's fees, appellant prayed judgment, and the costs of suit and general and special relief.

Appellee, J. W. Cornelius, answered under oath, denying categorically the allegations of plaintiff's petition, except that he admitted the signing of said bond by him and the execution of said notes and deeds of trust by appellant and his assignor, and that he had paid nothing to either appellant or his assignor on said bond of indemnity. He further pleaded that he was never a stockholder in said F. & M. Bank, nor interested in same, but was a surety on the depository bond of said bank to Jones county with 10 other parties; that 17 named parties were the stockholders of said bank; that on the 22d day of December, 1910, Geo. H. Baker, one of the principal stockholders of said bank, presented him with said bond sued on, and represented that all the stockholders of said bank and all the sureties on said depository bond would sign the same, and that, relying on said representations, he signed said bond with the distinct understanding and agreement that said bond was not to be binding upon him, and was not to be delivered, unless

signed by all of said parties; that said Baker, in securing the signature of appellee, was the agent of appellant and his assignor; that on the same day appellee met appellant and informed him of the conditions upon which he had signed the indemnity bond, to which conditions appellant agreed; that said Baker then delivered to appellant said bond for the purpose of appellant's obtaining further signatures thereto; that, in making said agreement with appellee, the appellant was acting for himself and his assignor, and that both appellant and his assignor had notice of the conditions under which appellee had signed said bond; that other depository bondsmen, 5 named parties, did not sign the bond sued on, and certain stockholders of the bank, 11 named parties, did not sign the same; that appellee did not learn that said bondsmen and shareholders did not sign the bond sued on until after the maturity thereof, and after appellant had demanded of him the payment of same; that appellant, if he purchased the interest of his assignor, did so long after maturity, and with full notice of appellee's defense thereto; and that, by reason of the facts stated, the consideration for appellee's signing said bond had wholly failed, and that he never became liable thereon. Appellee further pleaded that the notes of appellant and his assignor were executed to the F. & M. Bank for the purpose of swelling its assets and to induce the First National Bank to act as liquidating agent, and that, contemporaneously with the execution of said notes, the said banks entered into an agreement whereby the First National Bank was to assume the liabilities of the former and act as its liquidating agent, and said notes and the assets of the former bank were to be turned over to the latter as security; that, as between appellant and his assignor, on the one hand, and the F. & M. Bank, on the other, said notes were accommodation paper, and that said F. & M. Bank and the stockholders, proratably, became liable and bound under said contract to the amount of said notes as principal debtor, and appellant and his assignors were the sureties; that the instrument sued on was for the purpose of protecting appellant and his assignor as stockholders in said F. & M. Bank from the payment of more than their pro rata of the indebtedness of said bank, and, as between the obligors and appellant and his assignor, such obligors were entitled to the protection of the F. & M. Bank and its stockholders for the debt to the First National Bank, for which said notes were security, and were only secondarily liable for the indebtedness after the revenues of the bank and its stockholders were exhausted; that later, and after maturity of said notes on, to wit, January 2, 1912, the F. & M. Bank and the First National Bank entered into a contract, appellant and his assignor participating in and consenting to and ratifying said contract and agreement, whereby the F. & M. Bank turned over to the First National Bank all of its assets, including the notes of appellant and his assignor, in full liquidation of the affairs of the said bank, and in discharge of all claims against said bank and its stockholders, and by which said bank and its stockholders were released from further liability, and by the terms of which contract it was agreed that said notes of appellant and his assignor should each be credited with $3,248, and were to be no longer assets of the F. & M. Bank, but the property of the First National Bank, and be extended for one year, and be the binding notes of appellant and his assignor to said First National Bank, and that there were to be attached to said notes certain notes and overdrafts as collateral security, by which acts and agreements the original contract of liquidation was changed and another contract made between said banks and the appellant and his assignor; that, if appellant and his assignor paid anything to said First National Bank, it was upon another and different obligation from that which the bond sued on was made to secure; that appellee, not being a stockholder, did not participate in said contract, and had no notice or knowledge thereof, and did not consent to the release of the F. & M. Bank and its stockholders, and, accordingly, was discharged from liability on said bond, if ever he became liable thereon.

Attached to said answer of appellee were various exhibits, to wit: Exhibit A, the depository bond; Exhibit B, the contract between the F. & M. Bank and the First National Bank, by which the latter agreed to act as liquidating agent for the former; Exhibit C, the final contract between the two banks by which the liquidation was closed; and Exhibit D, the agreement between appellant and his assignor and the First National Bank for the extension of said notes, and that they should have certain credits and become the binding obligation of said parties to said First National Bank.

Appellant, by a supplemental petition, denied that Geo. H. Baker was the agent of himself or of Harrell in procuring the signatures to said bond, and alleged that Baker was the agent of the parties making the bond. He denied that he had any agreement with appellee by which appellee was not to be bound on said bond, unless certain parties signed the same, and denied that Baker made any such representations to appellee. He further denied that he, for himself, or as agent for Harrell, ever attempted to secure any signatures to the bond, but that, at the request of Davis, he did attempt to get one J. W. Fowler to sign same. He further denied that he, or his assignor, took the bond with any agreement or understanding that the liability of appellee thereon was contingent on securing the signatures of the de-

pository bondsmen and all the shareholders of said F. & M. Bank. He further denied that any change in the contractual relations between the parties, and as alleged by appellee, had taken place subsequent to the execution of the bond, and alleged that the act of liquidating the F. & M. Bank and applying such of its assets as could not be realized upon to the fixed amounts ascertained by the stockholders of said bank to be due by appellant and said Harrell, and the extension of the maturity date of the obligation of appellant and Harrell, to permit further pursuit of said bank's assets, was carrying out the real contract had between all parties at the time the instruments set out were executed. He admitted the collection of $2,490 from J. A. Mills' collateral notes, which he had accepted as a credit to be applied equally on the two notes sued on. He further alleged that all the balance of the assets of the F. & M. Bank, in the form of collateral notes, which were delivered by the First National Bank to appellant and Harrell, were still in appellant's possession, and he tendered them in court to the defendants upon the payment to appellant of the balance finally determined to be due by reason of the payment of said two $12,500 notes executed by himself and Harrell. He further alleged that said collateral notes were worthless and had no value.

The cause was submitted to a jury on special issues, and upon said issues the jury found: First, that J. W. Cornelius, appellee, did inform Geo. H. Baker, at or before the time he signed the contract or indemnity bond, that he would sign the same only on the condition that it should be signed also by the shareholders other than said Francis and Harrell, of the F. & M. Bank, and by the other sureties on the bond given by the F. & M. Bank to Jones county; second, that appellee did state in a conversation between himself, Geo. H. Baker, and appellant, at or before the delivery of the contract sued on, that he signed the same only on the condition that the other signatures thereto should be secured; third, that Geo. H. Baker, in securing the signatures of appellee to the indemnity bond, acted as the agent of the F. & M. Bank; and, fourth, that in securing said signatures, said Baker did not act as the agent of appellee. Upon the issue as to whether said Baker, in securing the signature of appellee, was acting as the agent of M. H. Francis, or whether he was acting as the agent of T. M. Harrell, the jury disagreed.

Upon the verdict of the jury, as hereinbefore set out, the court entered judgment in favor of appellee, and a judgment was entered as to the other parties defendant, as hereinbefore set out.

[1, 2] In his first assignment of error appellant complains of the action of the court in overruling plaintiff's objection to the appellee, J. W. Cornelius, testifying, in substance, that Mr. Baker had told him that all of the stockholders of the F. & M. Bank and all of the sureties on the bond to the county were to be on this indemnity bond, and that said indemnity bond was not to be good unless they did sign it. Appellant urges that the ruling of the trial court was erroneous, for the reason that it had not been shown, and was not thereafter shown, that said Baker was the agent of the appellant or of his assignor, and, further, neither of said last-named parties had authorized Baker to make any such statement, and that neither of said parties had any notice of said conversation between Baker and appellee before they accepted said bond and delivered their two notes to the First National Bank. We think that this evidence was admissible as against appellant upon appellee's plea of such agreement between him and Baker first, and thereafter between him and appellant. Appellee testified that after the conversation between him and Baker, and the promise by said Baker to secure the other signatures mentioned, and the stipulation on the part of appellee that they should be secured before the instrument would become binding, he had a conversation during which appellant was present and in which appellant participated, and that appellant agreed to the condition upon which appellee claimed he had signed the bond in the first instance, and that such agreement by appellant was made prior to delivery of the bond. Therefore we think that this testimony was admissible in due course of evidence as against appellant, as to that part of his claim which was predicated upon the balance alleged to be due and unpaid to him individually and in his own right. While it probably was not admissible as against his assignor, yet, being admissible as to one item of the appellant's claim, it was the duty of the appellant, in case he did not believe that such testimony was admissible as to the claim that he further set up as the assignee of T. M. Harrell, to request the court to instruct the jury, limiting such testimony only as to the first item of his claim, and, having failed to do so, he cannot now complain. Eastland v. Maney, 36 Tex. Civ. App. 147, 81 S. W. 574; Walker v. Brown, 66 Tex. 556, 1 S. W. 797; Roos v. Lewyn, 5 Tex. Civ. App. 593, 23 S. W. 450, 24 S. W. 538; Brin v. McGregor, 64 S. W. 78. Said assignment is overruled, and likewise the second assignment, which in another form involves the same principle.

[3] In his third assignment appellant urges that the judgment of the trial court is contrary to the law and unsupported by the evidence, in that the undisputed evidence shows that the appellee, Cornelius, executed and delivered said bond to one of the co-obligors—to wit, Geo. H. Baker—informing said Baker when he executed the same that he (appellee) would sign it only on the condi-

tion heretofore mentioned, and that thereafter said bond was delivered by said Baker to Mr. Harrell, assignor of appellant, without said condition precedent having been performed, and without notifying the said Harrell that the said Cornelius had prescribed any such condition precedent. As his fourth assignment, in part, involves the same question, we will discuss both assignments together.

In the fourth assignment appellant complains, in substance, that the judgment of the trial court is contrary to the law and without support of the evidence, in that the court did not render judgment in favor of appellant for $5,964.16, that being the amount of damages alleged to have been suffered by T. M. Harrell on said indemnity bond, for the reason that the undisputed evidence shows that said T. M. Harrell, appellant's assignor, did not have any knowledge or notice of any stipulations on the part of appellee as to the conditions upon which he executed said bond at the time said bond was delivered to said Harrell; that said Harrell, for a valuable consideration, sold and transferred all his rights under said indemnity bond, and the damages thereunder, to appellant prior to the institution of this suit. We believe that this assignment is well taken and should be sustained. From an examination of the statement of fact we find no evidence that shows, or tends to show, that T. M. Harrell at the time the bond was delivered to him had any knowledge or notice of the condition upon which it was signed by appellee or claimed to have been signed by him. While Geo. H. Baker and the appellee both testified to a conversation, during which said Baker and appellee and Francis were present, in which conversation appellee stated to Francis the condition upon which he had signed the bond, and that Francis agreed thereto, yet there is no evidence as to any knowledge on the part of Harrell as to such conditional execution of the bond by appellee, and Mr. Harrell testified that he did not know of any such condition precedent having been stipulated by the appellee. In reference to this matter he testified, in part, as follows:

"No, sir; nothing was said to me about the condition that Cornelius had demanded before he should become liable on that bond. I did not hear anything of that kind at all. No, sir; nothing at all was said in that conversation between Davis and Baker and Francis and myself when I first saw that bond with reference to Cornelius' liability, or as to whether he had demanded that there should be further signatures on the bond before he would be liable on it; I never heard anything of that kind at all. The first time that I ever heard anything at all about such a claim by Cornelius was some time during the summer of last year; that is, during the summer of 1913. I had a conversation with Cornelius about it some time during 1913."

The appellee testified as follows:

"No, sir; I never had any conversation with Mr. Harrell about this matter until long afterward. I did long afterwards tell Mr. Harrell that I would not be responsible on that bond unless they all signed it. At the time that I signed the bond—the indemnity bond—I did not know Mr. Harrell, but I knew him afterwards."

There is no evidence to show that Geo. H. Baker, in securing the signature of appellee, was acting as the agent of said Harrell, and, the jury having failed to answer the special issue No. 4, with reference to said matter, we are required to find, and do find, that the court, in entering his judgment, was controlled in his findings as to this issue by the uncontroverted evidence.

[4]. The question is then presented to us as to whether Francis, who had notice of the conditions upon which appellee signed the bond, can, as assignee, set up any superior claim by reason of his assignment from Harrell, who had no such notice of appellee's right and claim. It seems that the authorities hold that a subsequent purchaser with notice who acquires title from a former purchaser for value and without notice succeeds to all the rights of his grantor. Thomason v. Berwick, 52 Tex. Civ. App. 153, 113 S. W. 567; Johnson v. Newman, 43 Tex. 642; Edwards v. Brown, 68 Tex. 329, 4 S. W. 380, 5 S. W. 87; French v. Strumberg, 52 Tex. 92; Baldwin v. Root, 90 Tex. 552, 40 S. W. 3; Fordtran v. Perry, 60 S. W. 1000; French Finch & Co. v. Hicks et al., 52 Tex. Civ. App. 427, 114 S. W. 693; 1 Cent. Dig., title "Vendor and Purchaser," vol. 48, §§ 580, 581. Therefore this assignment is sustained, and likewise the third, in so far as it affects this item of $5,-964.16.

In the fifth assignment appellant complains of the action of the trial court in refusing to submit the special charge which purported to define "time of delivery." We do not think there is any merit in this specification, and overrule the assignment.

[5] In his sixth assignment appellant complains of the verdict of the jury in response to the second special issue, in answer to which the jury found that the appellee, Baker, and appellant, before the delivery of the contract to appellant, had a conversation in which the appellee informed appellant of the conditions upon which he had signed the bond, and that appellant agreed to such limitation, and urges that said verdict upon such issue is contrary to and unsupported by the evidence. Since appellee and Baker both testified positively to such conversation, we think that there is no merit in this contention, and overrule said assignment.

In view of our disposition of the case, rendered necessary by reason of our sustaining the third, in part, and the fourth assignments of error, we do not deem it necessary to discuss appellant's seventh assignment of error.

It is the order and judgment of this court that the judgment of the trial court be reversed, and that judgment be rendered for appellant as to the item of $5,964.16, together with 10 per cent. interest from January 13, 1914,

and that as to such amount judgment be had against appellee, but the judgment in favor of appellee as to appellant's claim in his own right be affirmed; and that judgment of the trial court as to other parties not appealing be undisturbed, and that the costs of this appeal be adjudged against appellee.

On Motion for Rehearing.

Appellee has filed an able and vigorous argument on his motion for rehearing, but, after a careful consideration of the same, and an examination of the authorities cited, we do not believe we would be justified in changing our conclusions reached in the original opinion, except as to the amount of recovery upon the Harrell obligation. It seems we were in error as to such amount, which error was induced, in part, by a mistake in various places in appellant's brief as to what the balance was on the Harrell claim. The amount should be for $5,475.39, and for this amount judgment is hereby rendered for appellant; otherwise the judgment as given in the original opinion is unaltered.

The motion for rehearing is overruled.