Robert Diaz De LEON, Appellant,

v.

Charles SALDANA, Appellee.

No. 04–86–00477–CV.

Court of Appeals of Texas,
San Antonio.

Dec. 31, 1987.

Rehearing Denied Feb. 8, 1988.

C. David Evans, San Antonio, for appellant.

Robert M. Dossman, San Antonio, for appellee.

Before CADENA, C.J., and BUTTS and CHAPA, JJ.

## OPINION

BUTTS, Justice.

Robert DeLeon appeals from a judgment granting recovery in quantum meruit to Charles Saldana, appellee.

DeLeon was president and 50% shareholder of Tri–Tech Engineering, Inc. Saldana worked part time as a contract accountant in the company's offices beginning in April, 1984 and continuing until 1985. From April, 1984 through December, 1984, Saldana was regularly paid for his accounting work. Howard Miller, vice-

president of the company and also a 50% shareholder, had sometime earlier voiced his desire to sell his share of the corporation. Saldana, who the others believed to be a certified public accountant, and three key employees, the chief engineer, the surveyor, and the computer technician, expressed a desire to buy out Miller and share the 50% interest. DeLeon and Miller were amenable. DeLeon would continue as majority owner. Other persons who had also indicated initial interest in the venture dropped out.

An employee, one of the potential buyers, "backed out" before any paperwork had been completed. The agreement between the employees had been that Saldana was to perform accounting services for his portion of the investment interest, and the other two prospective investors were to borrow money to invest. DeLeon and Miller attempted to aid them in obtaining bank loans but were not successful. The two employees could not obtain the necessary loans. The "deal" fell through.

Saldana had told his potential partners, the employees, that a dissolution of Tri-Tech would be advantageous because they would, in effect, begin on a clean slate without any liabilities or debts of the old company. He proposed dissolution of the corporation to the employees and to the two owners. DeLeon testified he did not care if it was the old company or a newly formed one. The two shareholders told Saldana to proceed. Miller testified he told him to do whatever was necessary. Saldana testified that while Miller told him he could do it, the request did not originate with Miller. The record reflects that Saldana advanced the theory of dissolution as a tax-saving measure.

Saldana actually prepared the articles of dissolution, the minutes, and several other legal documents necessary for dissolution. TEX.CIV.STAT.ANN., BUS.CORP.ACT, arts. 6.02–6.07 (Vernon 1980; Supp.1987). He and the two other employees had earlier submitted a "proposal" to the owners which set out the terms of the potential purchase of one-half the corporation and designated August 31, 1984, as the date for closing the deal. Before that time, however, the necessary loans could not be obtained. Saldana nevertheless took the "dissolution documents" to Austin to file with the Secretary of State. But the other potential buyers instructed him not to continue in the effort and to stop the proceedings. This was done; the corporation was not dissolved. To the date of trial Tri-Tech remained a viable, operating corporation with the same two shareholders (owners), DeLeon and Miller. The jury found against DeLeon but not against Miller or Tri-Tech. Thus only DeLeon appeals.

While part of Saldana's work was tax related, he also drafted the legal documents including Articles of Dissolution, Minutes of Joint Special Meetings, Certification of Officers, and Unanimous Consent of Shareholders. However, with the consent of the trial court, Saldana abandoned any claim for preparation of the legal documents since he was not a lawyer. Saldana testified to the amount of time spent on tax work.

The court thereafter submitted to the jury Saldana's claim for recovery on quantum meruit only for the accounting work. All claims based on breach of contract were abandoned.

In answer to special issues the jury found that Saldana performed "services consisting of the preparation of dissolution documents for dissolving Tri-Tech Engineering, Inc."; that these services provided "beneficial services for defendant, Robert Diaz DeLeon;" that DeLeon knowingly accepted the beneficial services; and that Saldana performed the services under circumstances which reasonably notified DeLeon that Saldana expected DeLeon to pay him a reasonable compensation for the work. The jury further found that reasonable compensation for these services was $4,200.00. The court entered a judgment awarding Saldana $4,200.00 along with an additional $2,000.00 as reasonable attorney fees.

Appellant complains in his first six points of error that Saldana's recovery is precluded because any implied contract between DeLeon and Saldana involved the unautho-

rized and illegal preparation of legal documents and the rendition of legal advice. It was argued that, since Saldana is not a lawyer, preparation of any "dissolution documents" pursuant to liquidating a corporation constitutes the unauthorized practice of law and would therefore be illegal. TEX.REV.CIV.STAT.ANN. art. 320a–1, §§ 10(a) and 19(a) (Vernon Supp.1987).

An expert called by DeLeon testified that the phrase "dissolution documents" did not necessarily refer only to legal instruments or documents which should be prepared by a lawyer. As chairman of the Unauthorized Practice of Law Committee for the San Antonio Bar Association, he testified that an accountant's advice regarding the tax consequences of liquidating a corporation would not constitute the unauthorized practice of law. The trial court permitted Saldana to proceed on the quantum meruit theory and to exclude any claim for payment relating to the preparation of legal documents.

 In this case we must assume the jury considered only the accounting work relating to the tax consequences of dissolution in awarding recovery. In the absence of a request that evidence be considered by the jury in its proper connection only, a party may not complain that the jury considered it for other purposes. *Walker v. Brown*, 66 Tex. 556, 1 S.W. 797 (1886); *Morales v. Lugo*, 464 S.W.2d 694, 697 (Tex. Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). DeLeon did not request that the jury's consideration be limited to the tax-related work, therefore he cannot now complain that the jury may have considered the unauthorized legal work in arriving at its verdict. We therefore overrule the first six points of error.

In points of error seven through twenty-two DeLeon argues that the record contains no evidence or insufficient evidence to support the jury's verdict awarding Saldana compensation based upon a claim for quantum meruit.

Quantum meruit has been defined as a right of recovery based upon a "promise implied by law to pay for beneficial services rendered and knowingly accepted."

*Black Lake Pipe Line Company v. Union Construction Company*, 538 S.W.2d 80, 86 (Tex.1976). It is accepted that quantum meruit is a "creature of equity," and arises independent of any express contract. In other words, if a person performs work beneficial to another, and such benefit is accepted and enjoyed by the other, non-payment for such benefit would unjustly enrich the party receiving the benefit by the value of the work done. *See City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex. Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *University State Bank v. Gifford–Hill Concrete Corp.*, 431 S.W.2d 561, 574 (Tex.Civ.App.—Fort Worth 1968, writ ref'd n.r.e.).

 The essential elements of recovery under quantum meruit are: (1) valuable services were rendered or materials furnished, (2) for the person sought to be charged, (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him, (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff, in performing such services was expecting to be paid by the person sought to be charged. *Montes v. Naismith & Trevino Construction Co.*, 459 S.W.2d 691, 694 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.). The Supreme Court reaffirms these elements in *Bashara v. Baptist Memorial Hospital System*, 685 S.W.2d 307, 310 (Tex.1985). The factfinder must find that each element was proved. A proper challenge may be directed to the legal and factual sufficiency of the evidence presented to support the fact findings.

 When a "no evidence" point is raised, the court will consider only that evidence and reasonable inferences therefrom which, viewed in its most favorable light, supports the jury finding and the court will reject all evidence or reasonable inferences to the contrary. *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex.1980); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Here the appellant moved the trial court for judgment n.o.v. and properly preserved his "no evi-

dence" points. *See,* Calvert, *No Evidence: and Insufficient Evidence: Points of Error,* 38 TEX.L.REV. 361 (1960).

■ We sustain the point of error that there is no evidence to support the submission to the jury of the issue whether DeLeon was benefited by the work done by Saldana in preparing the "dissolution documents." We sustain the point of error (no evidence) that the issue of acceptance (use and enjoyment) of the services should not have been submitted to the jury. We sustain the points of error, alleging no evidence upon which to submit the case to the jury, since Saldana was not entitled to recover under the quantum meruit theory. We sustain the mirror points of error that judgment should not have been entered for the same reasons. Therefore, point of error 7, 9, 11, 15, 17, and 19 are sustained.

We cannot consider the factually insufficient points because they were not properly preserved by the motion for new trial, and they are overruled. In the motion for new trial DeLeon did not urge any factually insufficient points; rather he urged there were only "no evidence" and "matter of law" points. *See,* TEX.R.CIV.P. 324(b)(2); TEX.R.APP.P. 52(d).

The circumstances in the present case differ from those in *City of Ingleside* and comparable quantum meruit cases. In those situations the benefits were already accepted, being used and enjoyed by the defendant. Recovery based on quantum meruit will not lie when the benefit is not accepted. *See Houston Lumber Supply Co. v. Wockenfuss,* 386 S.W.2d 330, 336 (Tex.Civ.App.—Houston 1965, writ ref'd n.r.e.). In this instance the potential buyers would benefit by not assuming debts of the corporation. However, the "deal" never arrived at the point for dissolution. The reason for dissolution existed only if the deal materialized, which it did not.

There was testimony that the corporation, Tri-Tech, always received a tax credit, and to dissolve it for purposes of a tax advantage made no sense unless there was a buy-out. The tax credit claimed each year already benefited Tri-Tech and the two owners.

In addition, Saldana stood to benefit by earning his place as a buyer solely through his services; his dissolution services constituted his share of the potential buy-out. In other words, the dissolution would have operated only to benefit the new purchasers, himself included. The receipt of benefits from a dissolution depended on the contingency of the purchase of Tri-Tech. Saldana testified that the work would aid any possible *future* buyers and both DeLeon and Miller at the future time when the corporation might be sold.

At the time of trial Saldana had the dissolution papers. He had never given them to Tri-Tech and its owners. The tax documents were never sent to the Internal Revenue Service as would have been required had the proposal been accepted. The proposal stated that the "liquidation expenses will be that of Tri-Tech Engineering, Inc." An accounting expert testified that dissolving the corporation without buyers would not be beneficial to either DeLeon or Miller because they would then become individually liable for the debts of the corporation.

It is clear that the benefits to be provided by the dissolution documents would be shared by Saldana and the other buyers, and were not exclusively for the benefit of DeLeon. *See Prairie Valley Independent School District v. Sawyer,* 665 S.W.2d 606, 610 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). In addition, the record discloses that the condition of the purchase of the corporation must occur before the dissolution documents could be effective; it is clear the proposal to purchase the corporation never was consummated, nor did the potential buyers ever finalize the "deal." We agree that Saldana failed to show that any of the services performed conferred a benefit upon DeLeon. *See Vandever v. Goettee,* 678 S.W.2d 630, 636 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

We therefore find that the services of Saldana in preparing the dissolution documents were not accepted, used and enjoyed by DeLeon. This would also mean that only DeLeon (not Tri-Tech, not Miller and not the potential buyers) benefited

from these services. The record does not support those findings. We agree that recovery based on quantum meruit does not lie.

In points of error 21, 22, and 23, DeLeon claims the jury made no fact finding regarding the existence of circumstances which would reasonably notify him that Saldana expected to be paid for performing the services. Although a special issue originally contained a misprint in that it asked if *Tri-Tech*, rather than DeLeon, was notified of Saldana's expectation of payment, DeLeon's name is written in the margin and that of Tri-Tech is crossed out. The judge's initials appear next to these changes. We must presume that the charge appears just as it did when the jury answered the issues. The charge, as modified, was submitted, and asked the jury if they found DeLeon was notified. Thus, the points of error are without merit.

Because of our disposition of the case, we have no need to address points of error 24-28, which question the award of attorney fees to Saldana. We do note, however, that had Saldana prevailed on this quantum meruit claim, an award of attorney fees would have been proper. *Olivares v. Porter Poultry & Egg Co.*, 523 S.W.2d 726, 730-31 (Tex.Civ.App.—San Antonio 1975, no writ); TEX.CIV.PRAC. & REM.CODE ANN. § 38.002 (Vernon 1986).

The judgment is reversed and rendered.